**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of himself | ) | |
| and others similarly situated, | ) | Case No. 1:12-cv-5485 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Mag. Judge Maria Valdez |
| | ) | (by consent) |
| TAXWORKS, INC., | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND FOR**
**SERVICE AWARD TO THE CLASS REPRESENTATIVE**

Plaintiff and Class Counsel respectfully request that the Court approve $74,992.50 in

attorney's fees and costs to Burke Law Offices, LLC, and $20,000 as a service award to Nicholas

Martin. In support of this motion, plaintiff states:

This is a Telephone Consumer Protection Act, 47 U.S.C. §227 class action based upon

autodialed and prerecorded calls made to cell phones. On August 15, 2014, this Court

preliminarily approved a proposed class action settlement, which provides for establishment of a

Settlement Fund of between $120,000 and $225,000, depending upon the number of class

members that submit claim forms. Class members that submit claims will receive $395 each.

As of October 10, 2014, 157 class members had submitted claim forms; more than 17%

of the 906 class members. The $395 per claim payout is nearly 80% of statutory damages

available under the TCPA, and is $62 *more* than the $333 class members would receive if they

opted out, filed their own case and prevailed, given a one-third contingency attorney's fees

provision. *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); 47 U.S.C. § 227(b)(3). There

have been no objections and no opt outs as of the date of this filing, which is being placed into

the public record with ample time for the class to review before the objection deadline.

Fed.R.Civ.P. 23(h). The requested fees and award are within the range of awards that are

typically approved in a case like this, and are particularly justified here, where there is such an excellent result.

I.     **BACKGROUND**

       A.     **The Settlement**

The Settlement requires TaxWorks to pay a minimum of $120,000 in Settlement Benefits, from which per-Class Member Settlement Benefits of up to $395 will be paid on a *pro rata* basis after payment of Settlement Administration Costs, awarded attorney's fees and costs, and any Class Representative Award.  (Agreement ¶ 10.35.)  To the extent the per-Class Member Settlement Benefits would be less than $395, the Settlement requires TaxWorks to pay up to an additional $105,000 in order to ensure that each Class Member who submits a Valid Claim Form will receive that amount.  (Agreement ¶ 10.35.1.2.)

Class Counsel has been advised that, pursuant to the Agreement, the Settlement Administrator mailed the Class Notice and a Claim Form to each of the 906 identified Class Members on or about August 29, and has thus far seen an approximate claim submission rate of 17%.  With estimated Settlement Administration Costs of only $5,000, and accounting for the requested attorney's fees, costs, and Class Representative Award, each Class Member who submitted a Valid Claim Form is expected to receive the maximum $395 under the Agreement. To date, no Class Member has objected to or opted out of the Settlement.

       B.     **Class Counsel Undertook Considerable Risk in Prosecuting this Action.**

Class Counsel undertook this matter on a pure contingency basis; as a result, he shouldered the risk of expending substantial costs and time without any guarantee of recovery. (Burke Decl. ¶ 12.)  Litigating and resolving this matter has required Class Counsel to expend time and money that could have been spent on other fee-generating matters.  (*Id.* ¶ 12.)

C.     __The Quality and Amount of Work Performed By Class Counsel__

The Settlement is the result of over two years of hard-fought litigation and negotiations, and an in-person mediation with the Court on September 24, 2013. It was only after months of, at times, heated settlement negotiations that the Settlement ultimately came to pass.

D.     __Class Counsel's Fee Request__

Pursuant to the Settlement Agreement, Class Counsel seeks a total award of attorney's fees and costs of $74,992.50, or approximately one-third of the total Settlement Benefits obtained for the Class.  (Agreement ¶ 13.5.)  Although defendant has agreed not to oppose the fee requested herein, the settlement is clear that the deal is not conditioned on an award of fees and costs. In other words, the Court can approve the Settlement and award Class Counsel a lesser amount in fees without undoing the Settlement itself.  (Agreement ¶¶ 13.4-13.5.)

## II.    THE SEVENTH CIRCUIT REQUIRES AN AWARD OF THE MARKET PRICE FOR LEGAL SERVICES IN COMMON FUND SETTLEMENTS

The Seventh Circuit has instructed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases).  Compensation also depends "on the quality of [counsel's] performance, . . . in part on the amount of work necessary to resolve the litigation, and in part on . . . the stakes of the case." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d at 721).

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries.  The Seventh Circuit and other courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel has a right to be compensated from that fund for the successful efforts in creating it.  *See Boeing Co. v. Van Gemert*, 444 U.S.

472, 478 (1980) ("lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("Once a settlement has been reached in a class action, the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.")

The TCPA is non fee-shifting. 47 U.S.C. § 227(b)(3). In common fund cases like this one, courts have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage of the fund; or (2) lodestar plus a risk multiplier. S*ee, e.g.*, *Americana Art China, Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-7670; MDL 2103, 2011 U.S. Dist. LEXIS 157910, at *9 (N.D. Ill. Nov. 30, 2011) (Holderman, C.J.) (citing *Williams v. Gen. Elec. Capital Auto Lease*, No. 94-7410, 1995 U.S. Dist. LEXIS 19179, at *29 (N.D. Ill. Dec. 20, 1995) (Lefkow, J.) (citations omitted)); *see also*, *e.g.*, *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 U.S. Dist. LEXIS 63477, at *14-15 (N.D. Ill. May 7, 2012) (same).

The Supreme Court has explained: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). While the Court must perform its own evaluation to verify that the requested fees are not the product of collusion, it should give weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms. *See, e.g., Mangone v. First USA Bank,* 206 F.R.D. 222, 226 (S.D. Ill. 2001).

III.    <u>ARGUMENT</u>

    A.    <u>Class Counsel's Requested Fee Award Is Reasonable.</u>

Class Counsel's request for fees is reasonable because it represents the market price for the legal services provided. *See In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-7670; MDL 2103, 2011 U.S. Dist. LEXIS 157910, at *19 (N.D. Ill. Nov. 30, 2011) (Holderman, C.J.); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568, 572 (7th Cir. 1992) ("It is not the function of judges in fee litigation to determine the equivalent of the medieval just price . . ." and counsel is "entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

        1.    <u>One-Third of the Common Fund Is a Reasonable Market Price.</u>

Both the Seventh Circuit and this Court have explicitly "recognized the appropriateness of relying on analogous class action settlements to determine the reasonableness of attorneys' fees." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *14-15 (citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (internal quotations omitted)).

Here, the requested fee of approximately one-third of the total Settlement Benefits is on par with attorneys' fees consistently awarded in TCPA class litigation in this District. *See Cummings v Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 12-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-05959 (N.D. Ill. Dec. 21, 2011 (Kennelly, J.) (Dkt. No. 116) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No.

07-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (same); *Saf-T-Gard Int'l, Inc., v. Seiko Corp. of Am.*, No. 09-00776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (same); *Hinman v. M & M Rental Ctr., Inc.*, No. 06-01156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (same); *Holtzman v. CCH*, No. 07-07033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).[1]

Class counsel's request is also on par with the 33.33% reasonable market price consistently awarded in other common fund, non-TCPA cases within the Seventh Circuit, too. *See, e.g., Harris v. Comscore, Inc.*, 1:11-cv-5807 (N.D.Ill. Oct. 1, 2014) (Dkt. No. 369) (awarding 1/3 of fund in spyware case); *In re Plasma Derivative Protein Therapies Antitrust Litig.*, No. 09-07666, (N.D. Ill. Apr. 16, 2014) (awarding 33.3% of the $64 million settlement fund in Sherman Act case) (Gottschall, J.) (Dkt. No. 703); *Beesley v. Int'l Paper Co.,* No: 06-703, 2014 U.S. Dist. LEXIS 12037, at *7-10 (S.D. Ill. Jan. 31, 2014) (awarding $10,000,000 fee (and over $1.5 million in costs) constituting one-third of the total common fund); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012) (approving one-third fee of over $32 million and noting that "the market price for fee awards is the amount of court-awarded attorneys' fees in comparable cases.") (citing *Taubenfeld,* 415 F.3d at 599); *George v. Kraft Foods Global, Inc.,* Nos. 08-3799, 07-1713, 2012 U.S. Dist. LEXIS 166816, at *8 (N.D. Ill. June 26, 2012) ("'[T]he normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee

---

[1] Courts in other jurisdictions have awarded a similar percentage of the common fund in TCPA settlements. *See, e.g., Locklear Elec., Inc. v. Norma L. Lay*, No. 09-00531 (S.D. Ill. Sept. 8, 2010) (Reagan, J.) (awarding 33% of the common fund plus costs); *Accounting Outsourcing, LLC. v Verizon Wireless*, No. 03-161, 2007 U.S. Dist. LEXIS 97153, at *6-7 (M.D. La. 2007) (awarding in excess of 35% of the common fund plus costs).

agreements and the Class counsel accepts a substantial risk of nonpayment."); *McDaniel v. Qwest Commc'ns. Corp.*, Civil Action No. 05-1008, 2011 U.S. Dist. LEXIS 154591, at *11-12 (N.D. Ill. Aug. 29, 2011) ("As decisions of the Seventh Circuit have confirmed, the real-world market range for contingent fee cases is 33% to 40%."); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *18-19 (citing cases and describing a 32.7% common fund fee as "well within the market rate and facially reasonable."); *Schulte*, 805 F. Supp. 2d at 598 ("A number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the reasonable range."); *In re Ready-Mixed Concrete Antitrust Litig.*, No. 05-00979, 2009 U.S. Dist. LEXIS 132343, at *34 (S.D. Ind. Mar. 31, 2009) ("[T]he normal rate of compensation in the market [is] 33.33% of the common fund recovered"); *Meyenburg v. Exxon Mobil Corp.*, No. 05-15, 2006 U.S. Dist. LEXIS 52962, at *5 (S.D. Ill. July 31, 2006) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 U.S. Dist. LEXIS 123349, at *9 (S.D. Ill. Nov. 22, 2010) (finding that "the market for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing that "a one-third fee is consistent with the market rate."). As is the case here, all of these cases likewise use the percentage of the *total* fund, and do not deduct the costs of notice and administration from that total.

The customary fee arrangement with private litigants and their attorneys for TCPA cases in this Circuit is 33% to 40% of the total recovery. *See Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40%, and affirming award of 38%); *Kirchoff v. Flynn,* 786 F. 2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third

contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP,* Case No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397, at *11 (N.D. Ill. Dec. 6, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding Class counsel the requested one-third of the common fund) (citation omitted).  Indeed, this 33.33% to 40% range is precisely the range of fees in most of the Plaintiffs' signed retainer agreements. Under these circumstances, the Court should give weight to the judgment of the Parties and their counsel regarding reasonable fees.  *See Stumpf v. PYOD, LLC*, No. 12-4688, 2013 U.S. Dist. LEXIS 165854, at *5-6 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone,* 206 F.R.D. at  226 (requiring weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).  Class Counsel's 40% contingency fee arrangement with plaintiff supports this market rate. Burke Decl. ¶ 14.  As shown above, the Parties' private, arms-length negotiations have yielded a result fully consistent with the market for legal fees.

## 2. <u>The Requested Fee Reflects the Market Price for Legal Services.</u>

In addition to analyzing the market price for legal services from analogous cases, courts may examine whether "'the risk of nonpayment a firm agrees to bear, . . .  the quality of its performance, . . . the amount of work necessary to resolve the litigation, and . . . the stakes of the case.'"  *See Sutton,* 504 F.3d at 691; *Silverman v. Motorola, Inc.*, 07 Civ. 4507, 2012 U.S. Dist. LEXIS 63477, at *4 (N.D. Ill. May 7, 2012) (noting that compensation may depend "on the quality of [counsel's] performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.") (citing *Synthroid,* 264 F.3d at 721.) (citation omitted).  Each factor supports the requested fee.

### a.    <u>Risk of Nonpayment Supports the Requested Fee.</u>

Prosecution of this action has involved significant financial risk.  As noted above, Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and knowing that there would only be a fee if there was a recovery.  (Burke Decl. ¶ 12.) Class Counsel litigated this case aggressively for more than a year before attending the Parties' settlement conference with the Court on September 24, 2013, and an agreement in principle was reached only after numerous additional arms-length negotiations thereafter.  (Burke Decl. ¶ 15.)

The risk of further protracted litigation was high in this case, given various defenses potentially available to Defendant, whose Answer asserts multiple affirmative defenses, from "prior express consent" under the TCPA to lack of standing.  (Dkt. No. 16, Answer at 7-9.) Absent settlement, Plaintiff would likely face fierce opposition at class certification, especially where courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case.  *Compare Jamison v. First Credit Servs*., 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 U.S. Dist. LEXIS 174222, at *14-15 (N.D. Ill. Dec. 6, 2012)  (certifying a class in a TCPA action and finding that no evidence supported the view that issues of consent would be individualized).

Further, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds.  *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, No. 09-910, 2011 U.S. Dist. LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an

award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.").

Finally, there is the risk of losing a jury trial. And, even if Plaintiff did prevail, any recovery could be delayed for years by an appeal. Any potential statutory recovery in this case would likely be impossible to recover as a factual matter due in part to the fact that Defendant would have every incentive to litigate appeals of any such judgment as far as possible over many years. The Settlement provides substantial relief—totaling nearly 80% of the amount contemplated in statutory damages under the TCPA, 47 U.S.C. § 227(b)(3)—to Class Members without further delay.

Plaintiff believes that he could have prevailed on these issues, but success is by no means assured, and litigating these issues would have required significant additional expenditure of time, money, and resources for which Class Counsel would not be compensated should Plaintiff lose on summary judgment or fail to certify a class. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028 (N.D. Ill. 2011) (finding class counsel incurred significant risk of nonpayment where, among other reasons, class counsel would have to overcome case dispositive defenses and certify a class); *see also Elkins v. Medco Health Solutions, Inc.*, No. 12-2141, 2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) (granting summary judgment against Plaintiff in TCPA class case); *Jamison*, 290 F.R.D. at 102-09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Greene v. DirecTV, Inc. ,* 10 C 117, 2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against Plaintiff in TCPA class case).

**b.**       **Class Counsel's Performance Supports the Requested Fee.**

By applying his skills and experience in class action litigation generally, and particularly in TCPA litigation, Class Counsel achieved an outstanding result in the face of a resolute

defense.  As discussed above, the Settlement affords Class Members Settlement Benefits of at least $125,000, and up to $225,000, to ensure estimated per-Class Member Settlement Benefits of $395—nearly 80% of the $500 afforded under the TCPA, 47 U.S.C. § 227(b)(3). This is a tremendous result.

The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, after numerous arms-length negotiations, and a settlement conference before the Court.  The Settlement Benefits afford substantial monetary relief to the Class, a direct result of the dedication, skill, and experience of Class Counsel.  *See, e.g., Schulte*, 805 F. Supp. 2d at 598 ("[T]he quality of Class counsel's performance in th[e] litigation favors approval of the fees requested. Class counsel have navigated a complicated case and have negotiated a Settlement Agreement that provides significant benefits to the Class Members."); *see also Redman v. Radioshack Corp.*, No. 14-1470, Dkt. No. 52 (7th Cir. Sept. 19, 2014).  ("We have emphasized that in determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation.").

c.      **The Amount of Work by Class Counsel Supports the Requested Fee.**

Class Counsel has devoted significant time to investigating, litigating, and settling this case, and has made considerable outlays of time and money by, among other things, (1) investigating this action; (2) conducting legal research; (3) conducting discovery; (4) negotiating the Settlement over several months, including by participating in multiple arms-length negotiations with defense counsel and a settlement conference with the Court; (5) reviewing confirmatory discovery and data; and (6) responding to Class Member inquiries.  (Burke Decl. ¶¶ 15-16.) Overall, Class Counsel's efforts have been substantial and the amount of work supports

the requested fee.  *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 2009 U.S. Dist. LEXIS 132343, at *33 (approving one-third fee where counsel engaged in the amount of work necessary to resolve the litigation).

**d.**     **The Stakes of the Case Support the Requested Fee.**

This action involves 906 Class Members to whom Defendant allegedly made unlawful, autodialed calls to their cell phones.  Although the TCPA provides for statutory damages, for most Class Members, the cost and risk of individual litigation is too daunting, and the costs to successfully prosecute even an individual action are so high, that a class action is realistically the only way that they would receive any relief.  Those who wish to pursue such litigation can, of course, opt out of the Settlement.  In light of the high number of Class Members who likely would not have received any relief without the assistance of Class Counsel—and the significant amount recovered for Class Members at nearly 80% of the statutory damages afforded under the TCPA—the requested fee is objectively reasonable, and should be awarded by the Court.

**3.**     ***Redman v. RadioShack* is Inapplicable to this Common Fund, Cash, Settlement.**

Class Counsel respectfully submits that this case is fundamentally distinct from *Radioshack* such that its holding does not apply. *Redman v. RadioShack Corp.*, --- F.3d ----, 2014 WL 4654477, (7th Cir. Sept. 19, 2014). *Radioshack* involved a coupon settlement in which direct notice went to less than a third of the class, resulting in a very low claims rate. The administrative costs were also deemed to be "excessively" high—$2.2 million for a notice plan that did not reach even half of the class. The Court found that, under CAFA, attorneys' fees awarded for purely coupon settlements must be evaluated based on the coupons' redemption value. *Id*. at *8-11.

The Court additionally found that, given that few class members had knowledge of the settlement and very few submitted claims—resulting in miniscule benefits— including

administrative costs in the calculation of attorneys' fees "eliminated the incentive of class counsel to economize on that expense" and "may have created a perverse incentive . . . ." *Id.* at *15. Thus, it was not fair, reasonable, or adequate under the circumstances to include the administrative costs as part of a purported settlement "fund" from which a percentage of attorneys' fees could be extracted. Moreover, the Court found that, in a coupon settlement, the redeemed value of coupons must be considered with respect to attorney's fees, rather than the potential value – a holding compelled by CAFA itself. *Id.* at *9; 28 U.S.C. § 1712(a); *In re HP Inkjet Printer Litigation,* 716 F.3d 1173, 1181-82 (9th Cir. 2013).

In contrast, here class members that submit claim forms are receiving cash payments, not coupons, from a guaranteed $225,000 common-fund. Moreover, unlike Redman, notices and claim forms were mailed to each of the 906 class members, a remarkable 17% of which exercised their option to obtain their $395. And although the precise amount of fees sought herein was conspicuously disclosed in the notice, there have been no objections to date.

There also have been no exclusions. This makes sense because, were a class member to exclude herself and hire a lawyer to litigate her individual TCPA case on a one-third contingency fee basis and win the statutory damages amount of $500, the class member would receive $330, $60 *less* than the $395 she will receive from this settlement. *Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (TCPA case finding that "$330.72 per fax [would be], the number appropriate if attorneys' fees (and the award to plaintiff) come off the top."), *also*, *Glass v. UBS Financial Services, Inc.,* 331 Fed.Appx. 452 (9th Cir. May 14, 2009) (approving 25% of the maximum cash payout, rather than actual payout).

**B.      The Proposed Class Representative Award Is Reasonable.**

Incentive awards compensate named plaintiffs for work done on behalf of the class by attempting to account for financial, personal, or reputational risks associated with litigation, and

promote public policy goals by encouraging plaintiffs to step forward on behalf of unnamed class members. The requested service awards of $20,000 for Representative Plaintiff Nicholas Martin is well justified and supported by case law in this District.

In addition to lending his name to this matter, and thus subjecting himself to public attention, Plaintiff was actively engaged in this Action. Among other things, he: (1) provided information to Class Counsel for the Complaint and other filings; (2) reviewed and assisted in drafting pleadings and other documents; (3) communicated on a regular basis with Class Counsel and kept informed of progress in the litigation and settlement negotiations; (4) attended the Parties' mediation conference; and (5) reviewed, edited and approved the proposed Settlement. (Burke Decl. ¶ 17.)

Given the maximum $225,000 available for the Class and current 17% claim submission rate, a $20,000 incentive award to Plaintiff will not have any impact, whatsoever, on the ability of Class Members who submit Valid Claim Forms to receive the maximum $395 in per-Class Member Settlement Benefits under the Agreement.

Further, the amount requested here, $20,000, is on par with incentive awards approved by federal courts in Illinois and elsewhere. *See, e.g., Cook,* 142 F.3d at 1016 (upholding award of $25,000 to class representative); *In re Sw. Airlines Voucher Litig.*, No. 11-8176, 2013 U.S. Dist. LEXIS 120735, at *32 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 each to two named plaintiffs); *Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc.*, Nos. 07-2898, 09-2026, 2012 U.S. Dist. LEXIS 25265, at *59 (N.D. Ill. Feb. 28, 2012) (a $25,000 incentive award is a reasonable one); *Kraft Foods Global, Inc.,* 2012 U.S. Dist. LEXIS 166816, at *8 (awarding $15,000 each to four named plaintiffs). It is also in line with – and actually below – many of the service awards

frequently awarded in TCPA cases.[2] Finally, the proposed class representative award was conspicuously disclosed in the notice mailed to the class, and no objections have yet been received. Accordingly, Class Counsel respectfully requests that the Court approve a service award of $20,000 to the Representative Plaintiff, Nicholas Martin.

IV.     **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully requests that the Court grant his motion and award Class Counsel attorney's fees and costs in the amount of $74,992.50, which represents one-third of the total Settlement Benefits available for the Class. Class Counsel further requests that the Court approve the Class Representative Award of $20,000 to the Representative Plaintiff, Nicholas Martin.

Respectfully submitted,

BURKE LAW OFFICES, LLC

Dated:   October 16, 2014                         /s/Alexander H. Burke
                                                  Counsel for Plaintiff and the Class

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

---

[2] *See Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla.) (Dkt. No. 195) (tentatively approving $20,000 incentive award); *Martin v. Dun & Bradstreet.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding $20,000 incentive award); *Hanley v. Fifth Third Bank*, No. 12-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) ($25,000 incentive award); *Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) ($30,000 to each plaintiff); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) ($25,000 incentive award).

aburke@burkelawllc.com

*Counsel for Plaintiff and the Class*

# Exhibit A

Declaration of Alexander H. Burke

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, on behalf of himself and others similarly situated, | ) ) | Case No. 1:12-cv-5485 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Hon. Mag. Judge Maria Valdez (by consent) |
| TAXWORKS, INC., | ) ) | |
| Defendant. | ) | |

**<u>DECLARATION OF ALEXANDER H. BURKE</u>**

I, ALEXANDER H. BURKE, declare as follows:

1.      I am Alexander H. Burke, manager of Burke Law Offices, LLC.  I submit this declaration in support of my firm's application for attorney's fees and class representative award in connection with the class settlement in this matter. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2.      In September 2008, I opened Burke Law Offices, LLC.  I am the only attorney at this firm, which focuses on consumer class action and consumer work on the plaintiff side. Since around the time the firm began, it has focused on prosecuting cases pursuant to the Telephone Consumer Protection Act. The firm works almost exclusively on a contingency basis.

3.      I am regularly asked to speak regarding TCPA issues, on the national level. For example, I conducted a one-hour CLE on prosecuting TCPA autodialer and Do Not Call claims pursuant to the Telephone Consumer Protection Act for both the National Association of Consumer Advocates in summer 2012, and spoke on similar subjects at the annual National Consumer Law Center national conferences in October 2012 and November 2013.  I have been asked to return and speak again to the National Association of Consumer Advocates; one such engagement is being scheduled for late 2014.

4.      I also am actively engaged in policymaking as to TCPA issues, and have had several meetings with various decision makers at the Federal Communications Commission.

5.      I make substantial efforts to remain current on the law, including class action issues.  I attended the National Consumer Law Center Consumer Rights Litigation Conference each year from 2006 through 2013, and was an active participant in the Consumer Class Action Intensive Symposium at each of those conferences.  In October 2009, I spoke on a panel of consumer class action attorneys welcoming newcomers to the conference.  In addition to regularly attending Chicago Bar Association meetings and events, I was the vice-chair of the Chicago Bar Association's consumer protection section in 2009 and the chair in 2010.  In November 2009, I moderated a panel of judges and attorneys discussing recent events and decisions concerning arbitration of consumer claims and class action bans in consumer contracts. I am scheduled to speak in November 2014 as to TCPA issues.

6.      Some notable autodialer TCPA class and individual actions that my firm has worked on include: *Smith v. State Farm Mut. Automobile Ins. Co.*, 2014 WL 228892, (N.D.Ill. Jan. 21, 2014) (designating me as pursuant to Fed.R.Civ.P. 23(g) interim liaison counsel pursuant to contested motion in large TCPA class case), 2014 WL 3906923 (Aug 11, 2014) (motion to dismiss denied in cutting edge vicarious liability case); *Buonomo v. Optimum Outcomes, Inc.*, --- F.R.D. ----, 2014 WL 1013841 (N.D.Ill. Mar. 17, 2014) (motion to strike TCPA class allegations denied in relevant part); *Hanley v. Fifth Third Bank*, 1:12-cv-1612 (N.D.Ill.) (final approval for $4.5 million nonreversionary TCPA settlement granted December 27, 2013); *Markovic v. Appriss, Inc.*, 2013 WL 6887972 (S.D.Ind. Dec. 31, 2013) (motion to dismiss denied in TCPA class case); *Martin v. Comcast Corporation*, 2013 WL 6229934 (N.D.Ill. Nov. 26, 2013) (motion to dismiss denied in TCPA class case); *Gold v. YouMail, Inc*., 2013 WL 652549 (S.D.Ind. Feb. 21, 2013); *Martin v. Dun & Bradstreet, Inc*., 1:12-cv-215 (N.D.Ill. Aug. 21, 2012) (Denlow, J.) (certifying litigation class and appointing me as sole class counsel) (July 16, 2013) (final approval granted for $7.5 million class settlement granted January 16, 2014); *Desai v. ADT, Inc*, 1:11-cv-1925 (June 21, 2013) (final approval for $15 million

TCPA class settlement granted); *Martin v. CCH, Inc.*, 1:10-cv-3494 (N.D.Ill.) (Mar. 20, 2013) (final approval granted for $2 million class settlement in TCPA autodialer case); *Swope v. Credit Management, LP*, 2013 WL 607830 (E.D.Mo. Feb. 19, 2013) (denying motion to dismiss in "wrong number" TCPA case); *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838 (N.D.Ill. Aug. 10, 2012) (denying motion to dismiss TCPA case on constitutional grounds); *Soppet v. Enhanced Recovery Co.*, 2011 WL 3704681(N.D.Ill. Aug 21, 2011), aff'd, 679 F.3d 637 (7th Cir. 2012) (TCPA defendant's summary judgment motion denied. My participation was limited to litigation in the lower court); *D.G. ex rel. Tang v. William W. Siegel & Associates, Attorneys at Law, LLC*, 2011 WL 2356390 (N.D.Ill. Jun 14, 2011); *Martin v. Bureau of Collection Recovery*, 2011WL2311869 (N.D.Ill. June 13, 2011) (motion to compel TCPA class discovery granted); *Powell v. West Asset Management, Inc.*, 773 F.Supp.2d 898 (N.D.Ill. 2011) (debt collector TCPA defendant's "failure to mitigate" defense stricken for failure to state a defense upon which relief may be granted); *Fike v. The Bureaus, Inc.*, 09-cv-2558 (N.D.Ill. Dec. 3, 2010) (final approval granted for $800,000 TCPA settlement in autodialer case against debt collection agency); *Donnelly v. NCO Financial Systems, Inc.*, 263 F.R.D. 500 (N.D.Ill. Dec. 16, 2009) (Fed.R.Civ.P. 72 objections overruled in toto), 2010 WL 308975 (N.D.Ill. Jan 13, 2010) (novel class action and TCPA discovery issues decided favorably to class).

7.      My team and I were recently appointed class counsel by Judge Durkin in a contested motion for class certification in *Gomez v. PNC Bank, National Association*, ---F.Supp.2d ----, 2014 WL 3640798 (N.D.Ill. Jul. 24, 2014), a Fair Labor Standards Act collective action, with parallel state law claims.

8.      Before I opened Burke Law Offices, LLC, I worked at two different plaintiff boutique law firms doing mostly class action work, almost exclusively for consumers. Some decisions that I was actively involved in obtaining while at those law firms include: *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831 (N.D.Ill. 2008) (FCRA class certification granted); 542 F.Supp.2d 842 (N.D.Ill. 2008) (plaintiffs' motion for judgment on pleadings granted);

*Harris v. Best Buy Co.*, 07 C 2559, 2008 U.S. Dist. LEXIS 22166 (N.D.Ill. March 20, 2008) (class certification granted); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D.Ill. 2008) (FCRA class certification granted); *Redmon v. Uncle Julio's, Inc.*, 249 F.R.D. 290 (N.D.Ill. 2008) (FCRA class certification granted); *Harris v. Circuit City Stores, Inc.*, 2008 U.S. Dist. LEXIS 12596, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) (FCRA class certification granted); aff'd upon objection (Mar. 28, 2008); *Harris v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 76012 (N.D. Ill. Oct. 10, 2007) (motion to dismiss in putative class action denied); *Barnes v. FleetBoston Fin. Corp.*, C.A. No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D.Mass. Aug. 22, 2006) (appeal bond required for potentially frivolous objection to large class action settlement, and resulting in a $12.5 million settlement for Massachusetts consumers); *Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, 04 C 5759, 2006 U.S. Dist. LEXIS 19624 (N.D.Ill. March 30, 2006) (class certification granted); *Nichols v. Northland Groups, Inc.,* case nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 U.S. Dist. LEXIS 15037 (N.D.Ill. March 31, 2006) (class certification granted for concurrent classes against same defendant for ongoing violations); *Lucas v. GC Services, L.P.*, case No. 2:03 cv 498, 226 F.R.D. 328 (N.D.Ind. 2004) (compelling discovery), 226 F.R.D. 337 (N.D.Ind. 2005) (granting class certification); *Murry v. America's Mortg. Banc, Inc*., case nos. 03 C 5811, 03 C 6186, 2005 WL 1323364 (N.D. Ill. May  5, 2006) (Report and Recommendation granting class certification), aff'd, 2006 WL 1647531 (June 5, 2006); *Rawson v. Credigy Receivables, Inc.*, case no. 05 C 6032, 2006 U.S. Dist. LEXIS 6450 (N.D. Ill. Feb. 16, 2006) (denying motion to dismiss in class case against debt collector for suing on time-barred debts).

       9.      I graduated from Colgate University in 1997 (B.A. International Relations), and from Loyola University Chicago School of Law in 2003 (J.D.).  During law school I served as an extern to the Honorable Robert W. Gettleman of the District Court for the Northern District of Illinois and as a law clerk for the Honorable Nancy Jo Arnold, Chancery Division, Circuit Court of Cook County. I also served as an extern for the United States Attorney for the Northern

District of Illinois and was a research assistant to adjunct professor Honorable Michael J. Howlett, Jr.

10.     I was the Feature Articles Editor of the Loyola Consumer Law Review and Executive Editor of the International Law Forum. My published work includes International Harvesting on the Internet: A Consumer's Perspective on 2001 Proposed Legislation Restricting the Use of Cookies and Information Sharing, 14 Loy. Consumer L. Rev. 125 (2002).

11.     I became licensed to practice law in the State of Illinois in 2003 and the State of Wisconsin in March 2011, and am a member of the bar of the United States Court of Appeals for the Seventh and First Circuits, as well as the Northern District of Illinois, Central District of Illinois, Southern District of Illinois, Eastern District of Wisconsin, Northern District of Indiana, Southern District of Indiana and the District of Nebraska.  I am also a member of the Illinois State Bar Association, the Seventh Circuit Bar Association and the American Bar Association, as well as the National Association of Consumer Advocates.

12.     The above experience, qualifications, decisions and settlements demonstrate my ability and commitment to prosecuting TCPA class cases. Moreover, Burke Law took this matter on a contingency fee basis, which means that the firm would receive no remuneration absent a settlement or judgment. This matter has required me to spend time and resources that could have been spent on other matters. Because I undertook representation of this matter on a contingency-fee basis, my firm shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.

13.     The risks associated with an all-contingency practice are real. When Burke Law Offices, LLC loses cases, my firm takes in no money whatsoever, regardless of how hard I worked and regardless of how much money I spent on depositions, experts and other out-of-pocket costs. This happens occasionally. For example, I lost *Greene v. DirecTv, Inc.*, 2010 WL 4628734 (N.D.Ill. 2010), and *Elkins v. Medco Health Solutions, Inc.*, 2014 WL 1663406 (E.D.Mo. April 25, 2014), both hard-fought litigations that I took on a contingency basis. My firm put substantial time and money into both; resources that could have been allocated to other

cases. I believed that the plaintiff/class would prevail in both of these cases when I accepted them for representation, but in the end I was incorrect. Sometimes losses are even more difficult: I lost *Martin v. PPP, Inc.*, what I viewed as a slam-dunk case on the merits, because of a pick-off settlement offer (this happened before the Seventh Circuit ruled in *Damasco*). 719 F.Supp.2d 967 (N.D.Ill. June 25, 2010). As with other lawyers, sometimes I think I should have won cases or motions that I eventually lose. The difference is that while most lawyers (including my adversaries) receive remuneration regardless of whether they win or lose, I do not. These are not the only cases I have lost as a solo practitioner, but they illustrate the risks associated with this kind of contingency practice.

14.     The contract my firm entered into with plaintiffs Nicholas Martin calls for the client to pay, on a contingency basis, 40% of the total amount of any judgment or settlement after costs had been deducted. Because I had focused on TCPA cases for quite some time and believed the market would bear such, in around 2010, I raised my contingency fee to 40%, after costs. I have not had any potential clients balk a 40% fee. Plaintiff Nicholas Martin is a good example: when I began representing Mr. Martin in around 2009, the contract between Burke Law Offices, LLC and Mr. Martin called for one-third in attorney's fees. Mr. Martin agreed to the higher rate; I understand he did so because he believed I deserved such a fee because of my representation and results. Based upon conversations with other TCPA lawyers in Chicago, I am confident that the market rate for plaintiff contingency representation for this kind of case is between one-third and 40%.

15.     Obtaining this excellent result for the class in this matter was no easy task. It involved heated and adversarial discussions regarding discovery and settlement. Several times negotiations fell apart completely, and the parties lost hope and moved the case forward on a litigation and discovery track. However, after an in-person mediation with Judge Valdez (which Nicholas Martin attended) and several subsequent in-person, arms-length settlement discussions between counsel, the instant settlement was reached.

16.     Probably because I listed my direct line telephone number was on the notice that was mailed to the class, I received numerous telephone calls from class members in this matter. I personally fielded each of these telephone calls, and answered any questions class members had, and gave advice when appropriate. I was very pleased to hear the comments from the tax professionals that comprise the class about the settlement, which were all positive.

17.     Nicholas Martin, the representative plaintiff, played a substantial role in the litigation. Mr. Martin has significant experience with class actions, and with TCPA cases in particular. I consulted with Mr. Martin, and he gave helpful insight, every step of the way in this case, from pre-filing investigation, drafting pleadings, developing a case strategy, and of course, negotiating this settlement.

18.     Based upon my previous experience as noted above, I believe this settlement, and the requested fee, to be fair and reasonable under the circumstances and in the best interest of the class. The settlement provides some of the best monetary recovery I have ever seen in a TCPA autodialer case, and will act as a strong deterrent to future conduct by other actors considering activities proscribed by the TCPA.

I declare under penalty of perjury of the laws of Illinois and the United States that the foregoing is true and correct, and that this declaration was executed in Evanston, Illinois on October 16, 2014.

/s/Alexander H. Burke