IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS M. MARTIN, on behalf of himself and others similarly situated, | ) <br> ) No. 1:12-cv-05485 <br> ) |
| Plaintiff, | ) |
| | ) Hon. Mag. Judge Maria Valdez |
| v. | ) (by consent) |
| | ) |
| TAXWORKS, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED MEMORANDUM
<u>IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Plaintiff Nicholas M. Martin ("Plaintiff") respectfully submits this memorandum in support of final approval of the Settlement reached in this class action. For the reasons set forth herein, and in the papers previously submitted, the Settlement is fair, adequate, and reasonable, and in the best interests of the Class. Accordingly, Plaintiff respectfully requests that the Court grant final approval to the Settlement by: (1) approving the proposed Settlement Agreement as fair, adequate, and reasonable for the certified Class; and (2) determining that adequate notice was provided to the Class.

The response from the Class to the Settlement has been overwhelmingly positive. Not only were 189 Valid Claim Forms submitted—amounting to an extraordinary 20.9% claims rate—but not a single Class Member opted out from or objected to the Settlement. If the Court approves the Settlement, Class Members who submitted Valid Claim Forms will receive $395 apiece, amounting to 79% of the $500 statutory damages ordinarily available under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(3), and more than they could

1

have received had they filed suit individually, assuming attorney's fees at the market rate of one-third of $500. For the reasons stated herein, the Court should grant final approval of this terrific Settlement.

I.  **FINAL APPROVAL SHOULD BE GRANTED.**

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)). When faced with a motion for final approval of a class action settlement under Rule 23, a court's inquiry is limited to whether the settlement is "lawful, fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2009). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation (Fourth)* ("*MCL 4th*") § 21.61, at 480 (2010).

A.  **The Settlement Is the Result of Informed, Arm's Length Negotiations.**

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg & A. Conte, *Newberg on Class Actions* ("*Newberg*") § 11:41 (4th ed. 2002); *Goldsmith v. Tech. Solutions Co.*, No. 92-4374, 1995 WL 17009594, *3 (N.D. Ill. Oct. 10, 1995). The Settlement here satisfies this test.

To reach this Settlement, the Parties engaged in extensive arms-length negotiations, which included a settlement conference with the Court on September 24, 2013 (DE 31), and several telephonic and in-person negotiations between counsel for the Parties. The

Representative Plaintiff, Mr. Martin, attended and actively participated in the settlement conference, and has been actively involved in assisting Class Counsel in discovery and the settlement negotiation process.

The Parties' settlement discussions culminated in a Settlement Agreement that provides substantial relief to the Class. Under the Settlement, TaxWorks has agreed to pay Settlement Benefits of between $120,000 and $225,000, from which per-Class Member Settlement Benefits of up to $395, Settlement Administration Costs, awarded attorneys' fees and costs, and any Class Representative Award will be paid. (Settlement Agreement ("Agr.") ¶ 10.35.) The Parties are represented by highly competent counsel who have years of experience litigating and settling complex class actions, including actions involving alleged violations of the TCPA. *See generally* Declaration of Alexander H. Burke submitted as ECF Docket No. 61, pp. 18-24; and Supplemental Declaration of Alexander H. Burke, ("Supp. Burke Decl."), Exhibit A.

The Settlement is the result of a thorough investigation by the Parties. Plaintiff demanded and received information and materials relating to, *inter alia*, TaxWorks' calling practices, call records, and dialer equipment, as well as additional information permitting the identification of the Class; information was crucial for Plaintiff to evaluate class-wide damages. This information permitted Plaintiff to meaningfully negotiate on behalf of the Class, and ultimately achieve the exemplary Settlement for which he now seeks approval.

For these reasons, the Settlement is entitled to a presumption of fairness.

    **B.**     **Class Members Received the Best Notice Practicable.**

This Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the

circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. (DE 60 at 1-2.) This notice program has been fully implemented by independent Settlement Administrator First Class, Inc. ("First Class"). *See generally* Declaration of Bailey Hughes ("First Class Decl."), attached as <u>Exhibit B</u>.

TaxWorks provided First Class with a list containing the names and addresses of the 906 Class Members (the "Class Member List"). (First Class Decl. ¶¶3-5.) After receiving the Class Member List, First Class processed the data to ensure adequate formatting. (*Id.*) First Class then mailed a Claim Form and long-form notice containing a summary of the Settlement ("Class Notice") to each of the 906 Class Members on the Class Member List using the formatted addresses. (*Id.* ¶¶6-7.) Mailings that were returned undeliverable were run through MasterFiles Probe 260 locate service, akin to a skip trace, and remailed to all new addresses that were found. (*Id.* ¶8.)

The Class Notice mailed to the Class Members informed them of, among other things: (1) information about the Action, the Settlement, and the release; (2) deadlines for all Class Members to file a Claim Form, opt out of the Settlement, or object to the Settlement; (3) the amount being sought by Class Counsel in attorneys' fees and costs, and the proposed Class Representative Award; and (4) the date and location of the Final Approval Hearing.

First Class received a total of 189 Valid Claim Forms by the claims deadline of October 31, 2014, amounting to a very successful claims rate of 20.9%—substantially more than the typical 3-10% typically received in cases like this. Thus, the notice program approved by this Court and implemented by First Class has provided due and adequate notice of these proceedings and of the matters set forth therein, including the Settlement Agreement, to all

parties entitled to such notice, and satisfied the requirements of Fed. R. Civ. P. 23 and constitutional due process.

### C. The Settlement Satisfies the Criteria for Final Approval.

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. However, the Court "should not substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).

To evaluate fairness, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the amount of opposition to the settlement by affected parties; and (4) the opinion of competent counsel; and (5) the amount of discovery completed at the time of settlement. *Isby*, 75 F.3d at 1199. Of these considerations, the first is most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Applied to this case, the relevant criteria support final approval of the Settlement.

#### 1. The Strength of Plaintiff's Case Compared to the Amount of the Settlement

Class members that submitted claim forms will receive $395 each, nearly 80% of a judgment amount they could obtain at trial if they proved an individual, non-willful violation. This amount is also substantially more than the $333 an individual with a lower-than-market one-third contingency fee agreement with her lawyer would receive after fees were deducted. This factor strongly supports approval.

5

Under the Settlement, Class Members avoid all of the risks and obstacles to recovery and receive substantial benefits, in a timely fashion. Plaintiff and his counsel have negotiated an excellent settlement for the Class that requires Defendant to pay between $120,000 to $225,000 into a settlement fund enabling each Class Member who submits a Valid Claim Form to receive up to $395, *i.e.*, 79% of the $500 available in statutory damages under the TCPA, 47 U.S.C. § 227(b)(3). (Agr. ¶ 10.35.) All Class Members can recover a *pro rata* portion of the Settlement Benefits after Settlement Administration Costs, awarded attorneys' fees and costs, and any Class Representative Award are deducted, through a straightforward claims process that only requires completing a simple one-page form. As of November 17, 2014, 189 persons have submitted Valid Claim Forms. (First Class Decl. ¶ 12.) Because of the high number of valid claimants—each of whom will be receiving the per-Class Member Settlement Benefits cap of $395—Defendant will be paying beyond the "floor" amount of $120,000, to approximately $174,400.[1]

Furthermore, the release in this case is narrowly tailored to affect only claims arising out of the discreet calls that were the subject of this Action. (Agr. ¶ 18.1.) In light of the real risks outlined above combined with the fact that Plaintiff and Class Members faced lengthy, protracted, and expensive litigation had they not settled, this is a fair settlement that puts money in Class Members' pockets immediately. The Settlement should be approved by this Court.

---

[1] This contemplates a full payout of $395 to each of the 189 Class Members who submitted Valid Claim Forms ($74,655), as well as estimated Settlement Administration Costs of about $4,750.97, and the full amounts requested in attorneys' fees and costs ($74,992.50) and Class Representative Award ($20,000).

### *2.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

Final approval of a settlement is favored where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *See, e.g., In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (citing *Isby*, 75 F.3d at 1199). Throughout the negotiation process, TaxWorks vigorously defended its position and expressed every intention of continuing a spirited defense, absent a settlement, through class certification and trial. Class Counsel have a significant amount of experience in consumer class action litigation and know that any case involving a nationwide class can, and often does, lead to costly litigation that goes on for years.

Although Plaintiff has thoroughly investigated the factual and legal bases for his claims and has developed substantial evidence supporting his allegations that TaxWorks violated the TCPA, one cannot ignore the presence of significant risks in continuing the litigation had settlement not occurred. This case turns on, among other things, competing interpretations as to whether Plaintiff and the Class "consented" to receiving automated calls from Defendant on their cell phones. Plaintiff's position is that TaxWorks failed to obtain the required consent before making the calls at issue. Plaintiff alleges that, as such, he and the Class are entitled to minimum statutory damages of $500 per call. (DE 1, Compl. ¶¶ 1, 15-19.)

TaxWorks, on the other hand, has steadfastly denied that it violated the TCPA, and asserted multiple affirmative defenses against Plaintiff's allegations, including consent, lack of standing, and due process, among others. (DE 16, Answer at 7-9.) Defendant has consistently maintained that some Class members may have given it prior express consent to contact them at their cellular phone numbers, and contests that it used an "automatic telephone dialing

system" under the TCPA.

Another risk Plaintiff faced going forward is that this Court, or the Seventh Circuit, would refuse to certify the class. "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09-5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citations omitted); *compare, e.g., Bridgeview Heath Care Ctr. Ltd. v. Clark*, No. 09-5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) (granting class certification), *with Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (denying class certification). If Defendant were able to present convincing facts to support its position, the Court could have refused to certify the Class, leaving Plaintiff to only pursue his individual claims.[2] Instead, "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted).

Moreover, the Federal Communications Commission has approximately forty-nine petitions that it is considering, the vast majority of which were requested by Industry advocates urging the FCC to loosen prohibitions against robocalls like the ones at issue in this case. And although Class Counsel actively advocates in the FCC in favor of consumers, the process can be quite unpredictable. For example, on October 30, 2014, the FCC issued an order re-confirming

---

[2] Plaintiff also notes that some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons—Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case—between $100 and $1,000 per violation—would not violate Defendant's due process rights.... Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.").

its unequivocal prior orders that facsimile advertisements must contain specific language explaining how recipients can "opt-out" of receiving more faxes, but providing *retroactive immunity* for violators that file petitions with the FCC; a wholly unexpected and incongruous result. http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf. The FCC rendered several orders during the pendency of this case, any one of which could have easily rendered this lawsuit worthless.

Finally, there is a substantial risk of losing inherent in any jury trial. Even if Plaintiff prevailed at trial, Defendant would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Class Members.

### 3. *No Opposition to the Settlement*

Given the full payout of the $395 cap to all Class Members who submitted a Valid Claim Form (amounting to 79% of the $500 ordinarily available in statutory damages under the TCPA), no requests for exclusion, no objections, and very successful 20.9% claims rate, the overwhelmingly positive response and lack of opposition to the Settlement favors approval. *Compare Eubank v. Pella Corp.*, 753 F.3d 718, 726 (7th Cir. 2014) (finding that class counsel had "sold out the class" and that, "[c]onsidering the modesty of the settlement, the length and complexity of the forms, and the unfamiliarity of the average homeowner with arbitration, we're not surprised [with the 0.57% claims rate]"). Class settlements under the TCPA are routinely approved that afford significantly less than the $395 that each Class Member who submitted a Valid Claim Form will receive in this case. *See, e.g., Rose v. Bank of Am. Corp.*, No. 11-02390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) ("[T]he $20 to $40 range falls in the lower range of recovery achieved in other TCPA class action settlements.").

The lack of objectors challenging the Settlement in particular favors a finding that the Settlement is fair and reasonable. *See, e.g, Am. Civil Liberties Union v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002) ("In light of the fact that no objectors came forward to challenge the settlement, and because we believe that the settlement is otherwise fair and reasonable, we hold that these factors present no bar to approval of the settlement."). This constitutes strong circumstantial evidence that the Settlement is fair. Indeed, settlements have been approved over the objections of a relatively large percentage of the Class. *See, e.g., Isby*, 75 F.3d at 1200 (approving settlement over objections of 13% of the class); *Hiram Walker & Sons, Inc.*, 768 F.2d at 891 (approving settlement where 15% of the affected class objected).[3]

### 4. The Opinion of Counsel

Where class counsel is qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight. *See Isby*, 75 F.3d at 1200; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020 (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). . Here, Class Counsel, who is very experienced in class action litigation generally and TCPA cases in particular, believes that the settlement is fair, reasonable, adequate, and in the best interest of the Class as a whole. (Supp. Burke Decl. ¶ 1-2.)

### 5. The Extent of Discovery Completed and the Stage of the Proceedings

Courts consider the extent of discovery and the stage of the proceedings in determining whether a class settlement is fair, adequate and reasonable. Courts regularly approve prompt settlements achieved prior to the commencement of formal discovery, especially "where

---

[3] The exclusion and objection deadline expired on October 27, 2014. (DE 60, Order at 10.)

10

counsel have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 350, 350 (N.D. Ill. 2010) (internal quotations omitted)).

The Settlement is the result of a thorough investigation, formal and informal discovery, and an extensive evaluation of Plaintiff's legal claims. After the September 24, 2013 settlement conference with the Court, the Parties engaged in additional informal discovery and exchanged further analyses of the issues and set forth their positions in even more detail. The fact that the Settlement was achieved through negotiations by well-informed counsel favors approval.

## II. CONCLUSION

The Settlement is fair, adequate and reasonable. The approximately $174,400 that Defendant must pay—permitting per-Settlement Class Member Benefits of $395—is an outstanding result in light of the recoveries potentially available under the law and the risks of continued litigation. Class Counsel also respectfully requests that the Court grant the motion and award Class Counsel $74,992.50, which amounts to approximately one-third of the $225,000 made available for the Class' benefit. Class Counsel further requests that the Court approve an incentive award of $20,000 for Class Representative Nicholas M. Martin.

Plaintiff respectfully requests that the Court grant final approval to this fantastic class settlement.

Dated:  November 19, 2014                    Respectfully submitted,

                                                                                    NICHOLAS M. MARTIN, on behalf
                                                                                    of himself and others similarly situated


                                                            By:   /s/Alexander H. Burke
                                                                  Counsel for Plaintiff and the Class


**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
 (312) 729-5288
 (312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

*Counsel for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2014, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to Defendant TaxWorks, Inc.'s following counsel of record.

/s/Alexander H. Burke

# Exhibit A

Supplemental Declaration of Alexander H. Burke

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS MARTIN, on behalf of himself and others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) TAXWORKS, INC., ) ) Defendant. ) ) | Case No. 1:12-cv-5485 Hon. Mag. Judge Maria Valdez (by consent) |

## **SUPPLEMENTAL DECLARATION OF ALEXANDER H. BURKE**

I, ALEXANDER H. BURKE, declare as follows:

1. I am Alexander H. Burke, manager of Burke Law Offices, LLC. I submit this declaration in further support of final approval of the class action settlement in this matter. I originally submitted a declaration in connection with this firm's petition for attorney's fees. ECF Docket No. 61, pp. 18-24. This document supplements that earlier one.

2. In my experience, the claims rate and relief for the class in this case compares exceptionally well with other settlements. I believe this settlement to be fair and reasonable, and believe that it be approved *in toto*.

I declare under penalty of perjury of the laws of Illinois and the United States that the foregoing is true and correct, and that this declaration was executed in Chicago, Illinois on November 19, 2014.

/s/Alexander H. Burke

- 1 -

# Exhibit B

Declaration of Bailey Hughes of First Class, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS MARTIN on behalf of himself and others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>TAXWORKS, INC. and H&R BLOCK, INC.<br><br>                Defendant. | CASE NO. 1:12-CV-5485<br><br>Magistrate Judge Valdez<br>(by consent) |

## AFFIDAVIT OF BAILEY HUGHES

STATE OF ILLINOIS, COUNTY OF COOK

I, Bailey Hughes, under penalty of perjury affirm that the following statements are true:

1. I am a Case Manager for First Class, Inc. and have personal knowledge of this matter.

2. First Class, Inc., a Class Action Administration Service, was retained to send the notices to the class members for this case.

3. The class list was received from Ana Tagvoryan of Blank Rome LLP, and contained 928 records.

4. Prior to mailing the notice to the individuals on the class mailing list, First Class, Inc. followed its standard practice of processing the list through the Coding Accuracy Support System (CASS) and the NCOA (National Change of Address) update process of the U.S. Postal Service using software certified by the U.S. Postal Service. CASS allows First Class, Inc. to verify the address is correctly formatted for delivery and it also corrects zip codes. NCOA Move Update provides current address information, if available, and information regarding deliverability.

5. Prior to mailing the notice to individuals on the class mailing list, First Class, Inc. followed its standard practice of checking for and removing exact duplicate records within the class list, and in this case, 22 exact duplicates were found and removed.

6. The notices were mailed on August 29, 2014 to 906 class members.

7. The notices were mailed via First Class mail, postage prepaid, with Forwarding Service Requested.

8. As of November 17, 2014, 123 notices have been returned as undeliverable by the U.S. Postal Service. First Class, Inc. attempted to locate new addresses for all 123 notices using MasterFiles Probe 360 locate service. First Class, Inc. found new addresses for 30 of those and remailed notice to them. Of those 30 remailed notices, 4 notices were again returned as undeliverable by the U.S. Postal Service.

9. As of November 17, 2014, a total of 1 notice was returned by the U.S. Postal Service with a new address and remailed.

10. As of November 17, 2014, no objections have been received by First Class, Inc.

11. As of November 17, 2014, no requests for exclusion have been received by First Class, Inc.

12. As of November 17, 2014, 189 claim forms have been received which were postmarked on or before the cutoff date of October 31, 2014.

FURTHER AFFIANT SAYETH NOT.

_____  
AFFIANT

_____  
NOTARY PUBLIC

> OFFICIAL SEAL  
> LONNA B STREIGHT-SCHULZ  
> Notary Public - State of Illinois  
> My Commission Expires Aug-18, 2018

SWORN TO AND SUBSCRIBED before me this 19th day of November, 2014 by Bailey Hughes of First Class, Inc.

Page 2 of 2